James E. McDANIEL, Libelant-Appellant,

v.

THE M/S LISHOLT, her engines, etc., and A. S. Lise, her owner, Respondent-Appellee.

No. 353, Docket 24914.

United States Court of Appeals Second Circuit.

Argued May 9, 1958.

Decided July 10, 1958.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

Libelant appeals from a final decree of the United States District Court for the Southern District of New York entered October 31, 1957 after a trial, dismissing the libel.

Libelant brought suit in admiralty for $200,000 damages for personal injuries allegedly caused by the unseaworthiness of respondent's vessel and by the negligence of her owner and operator.

Libelant was a member of the Fire Department of the Panama Canal Zone Government. On February 6, 1954, at about 12:20 A.M., the vessel M/S Lisholt was tied up at Dock 6, Balboa Dock, Panama Canal Zone, while oil was being pumped from ashore into fuel tanks aboard the ship. Thereafter some of the oil overflowed and ignited. The Canal Zone Fire Department was called in promptly and fought the fire. The fire was believed to be extinguished at about 8:00 A.M. on that day. At about 4:00 P.M. libelant was assigned to the vessel as a fire watcher by the Fire Department of the Canal Zone Government. His duties included guarding against any re-igniting of the blaze, taking care of any hidden fires which might have been overlooked, extinguishing fires he could reasonably handle and reporting those fires he could not handle.

Prior to the time libelant had come aboard, members of the crew of the vessel had detected an odor in the ship's refrigerator room. After libelant came aboard the ship he went to the refrigerator room and detected an odor which he believed to be ammonia gas. He then went on deck for the purpose of reporting the condition to the Fire Department. On deck he met a chemist and the stevedore foreman. These three men decided on a further investigation and the chemist and libelant went below to the refrigerator room where libelant noted the odor was stronger. He suggested that they leave. Immediately after they had

Maclay, Morgan & Williams, New York City (Hugh S. Williamson and William I. Stoddard, New York City, of counsel), for libelant-appellant.

Haight, Gardner, Poor & Havens, New York City (Francis X. Byrn and James M. Estabrook, New York City, of counsel), for respondent-appellee.

left the refrigerator room a flash explosion occurred, as a result of which several persons were killed and the libelant was severely injured. The explosion resulted from the release of carbon monoxide gas caused by smouldering in the cork insulation of the refrigerator room due to the fire. There was no finding as to the actual igniting agent that caused the explosion.

The court below determined that libelant, as an employee of the Canal Zone Fire Department performing fire watch duties aboard the ship, was a licensee who was there by reason of public necessity and in the primary interests of the Panama Canal Zone.

■ The libelant seeks to have the court extend to him the ship owner's absolute duty to provide a seaworthy ship, a duty traditionally owed to seamen who sail with the ship and who are subjected to the perils of the sea. The Osceola, 1902, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. Following a dictum in that Supreme Court decision and influenced by a humanitarian policy, the courts have developed as part of the general maritime law a doctrine allowing recovery for injuries caused by the unseaworthiness of a vessel, imposing liability on the ship owner and the ship, and making this liability an absolute duty to provide a seaworthy ship. This doctrine has been made available to members of the crew, stevedores and shore-based workers who come aboard in the employ of independent contractors to perform the type of work traditionally done by seamen. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Petterson v. Alaska SS. Co., 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Halecki v. United New York and New Jersey Sandy Hook Pilots Ass'n, 2 Cir., 251 F.2d 708, certiorari granted 78 S.Ct. 1149.

But the absolute liability imposed on the ship owner and ship can be extended to shore-based workers only if they are doing work traditionally done by seamen. We have stated that whether this special protection is afforded " * * * depends upon whether the work on which the plaintiff was engaged was of a kind that the crew of a vessel was accustomed to perform." Berge v. National Bulk Carriers Corp., 2 Cir., 251 F.2d 717, 718, certiorari denied 356 U.S. 958, 78 S.Ct. 994, 2 L.Ed.2d 1066. In that case we refused to extend the warranty of seaworthiness to a shore-based rigger engaged in work designed to be a virtual rebuilding of the interior of the vessel. In Berryhill v. Pacific Far East Line, 9 Cir., 238 F.2d 385, certiorari denied 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537, recovery was denied for the same reason to a workman engaged in major repairs aboard a dry-docked vessel.

■ Libelant was employed by the Canal Zone Fire Department and was aboard the ship in the performance of his duties to that Department rather than by any arrangement with the ship owner. Though his being aboard may have been of incidental benefit to the ship, his purpose in being there was to protect the Canal Zone from fires. His presence aboard the ship cannot be explained on the theory that he was performing any duty within the traditional or customary scope of activity of the crew. He was there not because the ship owner chose to employ him rather than a member of the crew to undertake a particular job, but rather because the Fire Department ordered him aboard to maintain safety in the Canal Zone.

In addition, it is undisputed that the vessel was unseaworthy at the time libelant went aboard. He was stationed aboard the ship because of the vessel's unseaworthiness occasioned by the fire. There can be no duty to furnish a seaworthy ship to a fireman who was on the vessel knowing it to be unseaworthy, and was on board because of its unseaworthiness.

We find, therefore, that the warranty of seaworthiness does not extend to the libelant.

■■ Libelant claims further that he is entitled to recover on the ground of

the owner's negligence. It has been generally held that a fireman entering premises in the performance of his duties is a licensee, and accordingly the owner has no greater duty than to refrain from the infliction of wilful or wanton injury on the fireman and to exercise ordinary care to avoid injuring the fireman by any affirmative and active acts of negligence. As was stated in Kermarec v. Compagnie Generale Transatlantique, 2 Cir., 245 F. 2d 175, at page 178, certiorari granted 355 U.S. 902, 78 S.Ct. 335, 2 L.Ed.2d 259:

> "The general rule is that the ship owner shall not wilfully or wantonly injure a licensee, or expose him to hidden perils or fail to use due care to prevent injury to him after discovering that he is in danger."

No wilful or wanton conduct on the part of the owner was proved.

Although there was in fact a peril, there was no showing that the owner had any knowledge of the conditions within the refrigerator room that gave rise to the explosion, or any opportunity to give notice to the libelant of this peril.

■■ Moreover, as a fireman libelant assumed the ordinary risks of his calling. One of the purposes for which the libelant came aboard was to make the inspection designed to discover the condition that resulted in his injury. One cannot recover for injuries received in the performance of acts calculated to eliminate the actual cause of the injury. Byars v. Moore-McCormack Lines, Inc., 2 Cir., 155 F.2d 587, 588, where the court cited with approval the following language from Mullin v. Genesee County Electric Light, Power & Gas Co., 202 N.Y. 275, at page 279, 95 N.E. 689, 690:

> "The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe."

See, also, Bruszewski v. Isthmian Steamship Co., 3 Cir., 163 F.2d 720.

The final decree is affirmed.