Walter **HUBER**, Libelant,

v.

**UNITED STATES** of America, Respondent, and West Winds, Inc., a corporation, Respondent-Impleaded (Travelers Insurance Company, a corporation, Intervenor).

No. 27261.

United States District Court
N. D. California, S. D.

Oct. 19, 1959.

Herron & Winn, San Francisco, Cal. for libelant.

Barfield & Barfield, San Francisco, Cal., for West Winds, Inc., Dorr, Cooper & Hays, San Francisco, Cal., for intervenor.

Lynn J. Gillard, U. S. Atty., San Francisco, Keith R. Ferguson, Sp. Asst. to the Atty. Gen., John F. Meadows, Atty. Admiralty & Shipping Section, San Francisco, Cal., for respondent.

ROCHE, District Judge.

Libelant brought action against the United States for injuries sustained while engaged in repair work on the SS Sarita, a vessel belonging to respondent. The United States interpleaded West Winds, Inc., alleging that the latter would bear the ultimate liability were libelant to effect a recovery.

On March 23, 1955, the day he suffered his injuries, libelant was employed as a rigger by West Winds, a ship repair firm. His job required him to move heavy machinery at the request of the

machinists with whom he worked. The United States had contracted with West Winds to perform one phase in a series of repairs to be made on the Sarita pursuant to the Emergency Ship Repair Program, an operation designed to accomplish major repairs to nonelectrical machinery on certain ships in the Reserve Fleet. Prior to her participation in the program the Sarita had been in "moth balls" with the Suisun Reserve Fleet since 1947 and she was returned there when the repair work was completed. Coastwise Lines was under contract with the United States to move the Sarita from and back to the Reserve Fleet and between shipyards.

On March 23 the Sarita was moored at West Winds' dock in San Francisco Bay. Libelant was injured when he slipped while attempting to replace a condenser cover on the Sarita with the aid of a chain hoist. He alleges that he fell because of inadequate lighting and a slippery substance on the deck, conditions which made the ship unseaworthy in his opinion.

■ At the outset of trial libelant elected to go forward solely on the theory that the unseaworthiness of the Sarita was the cause of his injuries. To succeed he must show that he is one of those protected by the doctrine of seaworthiness. It is the opinion of this court that he is not. That doctrine, as developed by case law, holds a shipowner liable without fault to those who, while doing "ship's work," are injured by reason of the unseaworthiness of his vessel. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Petterson v. Alaska Steamship Co., 9 Cir., 1953, 205 F.2d 478, affirmed per curiam 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. Limitations upon what is to be considered "ship's work" were laid down by the Court of Appeals for the Ninth Circuit in Berryhill v. Pacific Far East Line, 9 Cir., 1956, 238 F.2d 385, certiorari denied 1957, 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537, and more recently by

the Supreme Court in United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541.

In the Berryhill case, recovery under the warranty of seaworthiness was denied to an employee of a shipyard who was injured while making repairs on the propulsion machinery of a vessel owned by respondent. While the facts of the instant case are not so extreme as they were in Berryhill—there the ship was in drydock and libelant's injuries were caused by defects in apparatus owned by his employer—it would appear to be a difference without a distinction. As read by this court, that case stands for a strict construction of "ship's work" when the reason for the rule of absolute liability is not present. Libelant here was no more subject to the perils of navigation at sea than was Berryhill. The opinion expressed doubt that general repairs could, or should, be considered as "ship's work."

The Halecki case rejected the claim of an employee of a specialized subcontractor who was poisoned while cleaning the ship's generators. The Supreme Court occupied itself primarily with a close inspection of the work performed and, upon the facts, concluded it was not "ship's work." As in the Berryhill case, there was an implicit rejection of further extension of the seaworthiness warranty.

■ In the instant case, respondent offered uncontroverted testimony that the specific task performed by libelant when he was injured—replacing a condenser cover—is not work historically or currently performed by seamen. But more relevant than the specific task is the overall work of which the libelant's task was a part. Latus v. United States, D.C.E.D.N.Y.1959, 170 F.Supp. 837. At all times while she was away from the Suisun Fleet the Sarita was a "dead" ship without crew or power. She furnished neither electricity or propulsion for herself, nor was she fit to do so. In fact, the specifications for the work done by West Winds expressly stated that she

was to remain "dead." That the Sarita was "out of navigation" and was to remain so is indicative of the type of work that was done. These were not minor repairs to a ship in service, but rather heavy, basic work intended only to put the Sarita in a condition from which she could be activated expeditiously should the need arise. The specifications called for major repairs of a nature ordinarily accomplished in a shipyard and bore little resemblance to marine navigation. West v. United States, 3 Cir., 1958, 256 F.2d 671; Berge v. National Bulk Carriers Corp., 2 Cir., 1958, 251 F.2d 717. The court can only conclude that libelant was not doing the work of a "seaman," and that therefore, he is not entitled to protection under the warranty of seaworthiness.

The libel is dismissed. Respondent will submit Findings of Fact and Conclusions of Law in accordance herewith.